UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES M. PERNA,

    Plaintiff,

v.

HEALTH ONE CREDIT UNION, ET AL.,

    Defendants.

Case No. 19-10001

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ANTHONY P. PATTI

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [17] AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [18]**

Plaintiff, James Perna, brings this suit to enforce an arbitration award against his former employer, Defendant Health One Credit Union ("HOCU"), and the National Credit Union Administration Board, the federal agency that liquidated that credit union. Though state and federal law provides courts the authority to enforce arbitration agreements, the Federal Credit Union Act ("FCUA"), which governs this suit, severely limits that authority. Because the FCUA trumps conflicting provisions of state and federal arbitration law, Defendants will be granted summary judgment.

**FACTUAL BACKGROUND**

Mr. Perna began working for HOCU on January 16, 1971. (Compl. ¶ 7). His employment contract was repeatedly renewed over the course of the intervening

years, and he eventually became the highest-ranking employee at HOCU. (August 27, 2018 Arbitration Hearing Tr., Dkt. 1-3, pg. 13).

On May 16, 2014, Annette Flood, the Director of the Office of Credit Unions for Michigan's Department of Insurance and Financial Services ("DIFS"), appointed the NCUA Board as the conservator of HOCU, pursuant to M.C.L. 490.241. (Dkt. 1-4, Ex. C). Director Flood based her decision on a confidential DIFS staff memorandum, and found that it was necessary to appoint a conservator "to conserve the credit union's assets, for the benefit of its members, depositors and other creditors." (*Id.*). That same day, Mr. Perna was terminated by a letter signed by L.J. Blankenberger, "Agent for the Conservator," and the Director of Region 1 of the NCUA. The letter explained that Federal Credit Union Act provided the Conservator the right to repudiate any contract that is deemed burdensome and whose repudiation would promote the orderly administration of the credit union's affairs. (Dkt. 1-5, Ex. D (citing 12 U.S.C. § 1787(c))). Mr. Perna's employment contract was deemed by the conservator to be one such contract. (*Id.*).

Following his sudden termination, Mr. Perna filed for unpaid wages and fringe benefits with the Occupational Safety and Health Administration Wage and Hours Program of the Michigan Department of Licensing and Regulatory Affairs ("LARA"). The NCUA Board's counsel, in a December 5, 2014 letter to Katherine Woods, an investigator at LARA, asserted that "Mr. Perna's tenure as CEO was not

successful and ultimately led to Health One's current financial predicament." (Dkt. 18-6; Ex. 5). The letter also explained that the Federal Credit Union Act gives the NCUA, in capacity as conservator, the discretion to repudiate burdensome contracts is such repudiation "will promote the orderly administration of the credit union's affairs." (*Id*. citing 12 U.S.C. § 1787(c)(1)). Mr. Perna's claims for expenses and vacation pay, the NCUA reasoned, were barred because the contracts on which those claims were based were repudiated (*Id*.). A January 29, 2015 letter from Ms. Woods explained that LARA was rejecting Mr. Perna's claim for fringe benefits because they were not allowed under the plain language of the employee handbook. (Dkt. 18-7, Ex. 6).

On July 1, 2015, Ms. Woods sent an amended letter finding that since Mr. Perna's employment agreement with HOCU contained an arbitration clause, LARA would take no further action in the case. (Dkt. 18-10, Ex. 9). "Resolution of this claim has been preempted by the contractual assent to arbitration by the American Arbitration Association for the issues being claimed." (*Id*.).

Meanwhile, on May 14, 2015, Mr. Perna, through counsel, sent a letter to Conservator Blankenberger of the NCUA Board making claims for unpaid wages and fringe benefit pursuant to the severance agreement in his employment contract. (Dkt. 18-11, Ex. 6). The letter argued that since Mr. Perna was never apprised of time limits for filing claims under 12 U.S.C. § 1787, he was entitled to begin filing

for an administrative claim pursuant to § 1787(b)(5). (*Id.*). On November 20, 2015, Mike Barton, President of the Asset Management and Assistance Center of the NCUA, denied Mr. Perna's claim as untimely. That letter cited NCUA Regulations § 709.6(a)(1) for the proposition that "failure to submit a written claim [against the liquidated credit union] within the time provided in the notice to creditors shall be deemed a waiver of said claim and the claimant shall have no further rights or remedies with respect to such claim." (Dkt. 18-12, Ex. 11).

Mr. Perna's attorney responded to the November 20, 2015 denial letter with a December 9, 2015 letter where he argued that the Repudiation of Agreement and Termination of Employment notice that Mr. Perna was given never included a notice of the time to bring a claim regarding his employment contract. (Dkt. 18-13, Ex. 12). Mr. Barton denied the request for reconsideration, observing that the exception for denial of late claims outlined in 12 U.S.C. § 1787(b)(5)(C)(ii) does not apply where the claimant had notice that a liquidating agent had been appointed. (Dkt. 18-14, Ex. 13).

Mr. Perna then scheduled an arbitration with the American Association of Arbitrators ("AAA"). Neither representatives from HOCU nor from the NCUA Board made an appearance in the arbitration, however, even after the arbitrator sent them letters that the arbitration would be held in their absence. (Arb. Hr'g Tr. 6). Rob Robine, a trial attorney with the National Credit Union Administration,

responded with an email to an AAA representative explaining that "the employment agreement containing the arbitration clause was repudiated pursuant to federal law, in connection with the conservatorship of Health One Credit Union." (Dkt. 18-22, Def. Ex. 21). The email closed: "Please do not contact our office further regarding this arbitration." (*Id.*). The arbitration hearing was held on August 27, 2018, without the presence of the Defendants or briefing on their behalf. (Arb. Hr'g Tr. 6). Plaintiff paid Defendants' share of the arbitration fee. (*Id.* at 8).

On October 12, 2018, Arbitrator Samuel McCargo issued an award for Mr. Perna and against HOCU in the amount of $315,645.02. (Arbitration Award, Dkt. 1-3, Ex. 15). The Arbitrator observed that since his authority derived from the employment contract between HOCU and Mr. Perna, he would not decide the NCUA Board's obligations to Mr. Perna. (*Id.*).

## PROCEDURAL HISTORY

Plaintiff filed his case on November 7, 2018 in Macomb County Circuit Court. Defendants removed the case to federal court on January 2, 2019 on the basis of the FCUA's grant of jurisdiction to civil suits in which the NCUA is a party. 12 U.S.C. § 1789(a)(2). [Dkt. # 1]. That same day, Defendants filed their Motion to Substitute Party [3]. After receiving further briefing from both parties, the Court, on April 2, 2019, granted in part and denied in part that motion, adding the NCUA Board as a party, but declining to dismiss Defendants HOCU and NCUA. [Dkt. # 14]. The

Court denied Defendants' Motion for Reconsideration on April 25, 2019. [Dkt. # 16].

On May 3, 2019, Plaintiff filed a Motion for Summary Judgment [17]. Defendants filed their own Motion for Summary Judgment on May 17, 2019 [18]. Those motions are fully briefed and will be decided without oral argument pursuant to Local Rule 7.1(f)(2).

**STANDARD OF REVIEW**

Both parties bring their motions under FED. R. CIV. P. 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Movant bears the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-movant lacks evidence to support an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Non-movant cannot rest on the pleadings and must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586-87. Non-movant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that

there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Rule 56(e)); *see also United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

**ANALYSIS**

The Court lacks the jurisdiction to confirm the arbitration award against HOCU or enforce it against the NCUA Board. Section 1787(b)(13)(C) of the FCUA provides as follows.

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union for which the Board has been appointed liquidating agent, including assets which the Board may acquire from itself as such liquidating agent; or
> (ii) any claim relating to any act or omission of such credit union or the Board as liquidating agent.

12 U.S.C. § 1787(b)(13)(C)

Creditors seeking to recoup funds owed by a liquidated credit union must proceed through the statutory mechanism provided by the FCUA. *See* 12 U.S.C. § 1787(b)(5)-(11). Plaintiff submitted such an administrative claim, and it was denied as untimely. (Dkt. 18-12; Def. Ex. 11).

Plaintiff argues in response that the FCUA is only "background authority" and that the "specific powers granted to the NCUA Board as conservator were based on Michigan law." (Dkt. 21, pg. 7). He bolsters this argument by a citation that to 12 U.S.C. § 1787(j), which provides that where the NCUA Board takes over a defunct credit union, "such liquidating agent shall possess all the rights, powers, and

privileges granted by State law to a liquidating agent of a State chartered credit union." 12 U.S.C § 1787(j). The FCUA certainly contemplates that the NCUA Board will act according to state legal procedures when liquidating a distressed credit union. This is not, however, a reason for the Court to privilege state contract law over provisions in the FCUA that explicitly limit its own jurisdiction. That the NCUA Board acted with the Michigan Department of Insurance and Financial Services to effectuate the liquidation of HOCU according to state law did not change the fact that the NCUA Board was exercising powers pursuant to federal statute. Both the DIFS's Order Appointing Conservator and the 30th Judicial Circuit Court's Order Appointing Receiver make clear that NCUA's appointment as conservator and receiver are accomplished pursuant to the Federal Credit Union Act, if also in addition to state law. The Court is aware of no legal authority that a federal agency loses its rights under its own enabling statute by opting to enforce its rights in state court.

The question then becomes whether, under the Federal Arbitration Act ("FAA"), Plaintiff can enforce his arbitration award against the NCUA Board, despite the FCUA.

As a starting point, this case does not create a conflict between the two statutes because the arbitration award itself provides no relief against the NCUA Board.

HOCU no longer exists. If the court were to grant full enforcement against HOCU, it would still have to modify the arbitration award for Plaintiff to receive a remedy.

The Opinion of the Arbitrator begins as follows.

> First, the arbitrator notes that the National Credit Union Administration (NCUA) became the "Conservator" for Health One Credit Union on May 16, 2014; it did not become a party to the Employment Agreement between Claimant and Health One. The only parties to the Agreement before this Arbitrator are Claimant and Health One. While NCUA became authorized to act on behalf of Health One, it did not become a substituted party by virtue of its role as "Conservator" for Health One. Therefore, the Arbitrator has no authority to resolve disputes under this Employment Agreement.

Dkt. 17-14; Pl. Ex. 13, pg. 9-10.

Plaintiff attempts to reargue before this Court that NCUA is the successor-in-interest to HOCU. He provides no reason, however, for why this designation would require modifying the award under 9 U.S.C. § 11 or vacating the award under 9 U.S.C. § 10. Only in his Response brief does Plaintiff elaborate on the importance of the successor-in-interest designation, citing to an unpublished Michigan Court of Appeals case for the unremarkable proposition that the NCUA Board, in its capacity as a liquidating agent, can sue on behalf of a liquidated credit union. *See National Credit Union Administration Board v. Woonton*, 2016 WL 6905903 (Mich. Ct. App. Nov. 22, 2016). It is not clear how the statutory authority to "sue and be sued" which *Woonton* references could cause the NCUA Board to be bound by arbitration clauses contracted by the liquidated credit union.

Even if it were a mistake for the arbitrator not to credit this argument (which it is not clear Plaintiff briefed in arbitration), such a mistake would not grounds for modification. 9 U.S.C. § 11(a), which Plaintiff cites as the statutory basis for the modification it seeks, applies only "where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." Legal error is not mentioned, and as the Plaintiff himself argued in his brief, "an arbitration award must "fly in the face of established legal precedent" for a court to find the manifest disregard for the law required to vacate an arbitration award under 9 U.S.C. § 10. (Dkt. 17, pg. 18, citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995). No such established legal precedent is presented here.

Plaintiff advances the contradictory positions that the arbitration award is ironclad and unreviewable when resisting Defendants' attempts to vacate the award, and malleable and reviewable when attempting to add the NCUA Board as a party. His attempt to modify and then enforce the arbitration agreement must fail.

Second, even if the FAA did dictate that the arbitration award should be enforced against the NCUA Board, the FCUA would trump the FAA.

> Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent "will be deducible from [the statute's] text

or legislative history," or from an inherent conflict between arbitration and the statute's underlying purposes.

*Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 225–27 (1987).

Courts that have considered the relationship between the FAA and the FCUA have found that the § 1787(b)(13)(C) abrogated the FAA when the NCUA Board repudiated a contract with an arbitration provision. As one such court reasoned,

> The FCUA contains a detailed administrative claims procedure, pursuant to which all creditors must submit claims. The purpose of the statute is to afford plaintiff, an arm of the executive branch of the government, with the ability to assess and quickly disburse the funds due to creditors of a defunct federal credit union. To that end, the statute precludes judicial review until after the administrative claims procedure is complete. Presumably, this enables plaintiff to assess the credit union's assets and fairly distribute any existing assets to the creditors. At the same time, the administrative claims process provides a centralized system for addressing claims so that whatever assets may remain can be preserved for the benefit of all creditors. The Court finds an inherent conflict in this statutory scheme which operates to benefit all creditors, with the FAA which would essentially serve to place the rights of creditors who have agreements containing arbitration provisions on different footing than those unable to rely on arbitration provisions. In addition, requiring plaintiff to defend creditor claims in arbitration would defeat a primary purpose of the statute, *i.e.,* centralizing the claims process and preserving the limited assets of the defunct credit union. Although it appears that defendant is the only party seeking arbitration, it is possible that many creditors of a federal credit union could pursue arbitration. The Court finds that Congress's enactment of a statute with a comprehensive administrative claims process, together with a limitation on judicial review, inherently conflicts with the FAA. Accordingly, claims falling within the purview of the FCUA may not be arbitrated.

*Nat'l Credit Union Admin. Bd. v. Lormet Cmty. Fed. Credit Union*, No. 1:10 CV 1964, 2010 WL 4806794, at *4 (N.D. Ohio Nov. 18, 2010); *accord, People's Trust Federal Credit Union v. National Credit Union Administration*, No. CR 16-0611, 2016 WL 4491635 (D. New Mexico Aug. 8, 2016).

Thus, even if Mr. Perna's arbitration clause could be modified to include the NCUA Board, the FCUA would still bar enforcement against the NCUA Board.

## Conclusion

Mr. Perna was denied relief against the NCUA Board by LARA, by the NCUA, and by arbitration. Even if the Court disagreed with the arbitrator's decision not to exercise jurisdiction over the NCUA Board, which it does not, the FAA doesn't authorize the Court to substitute its own judgment for that of the arbitrator. Even if, despite this, the Arbitration Award were modified, the FCUA would still bar its enforcement.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [17] is **DENIED** and Defendant's Motion for Summary Judgment [18] is **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow<br>
Arthur J. Tarnow<br>
Senior United States District Judge

Dated: July 15, 2019